IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Ricky A. Jennings, ) | Civil Action No. 2:14-929-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Deputy Kimberly Poirier, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on Plaintiff's motion to exclude certain opinions of Dr. Philip Trompetter, whom Defendant has identified as an expert witness. For the reasons set forth below, the Court denies the motion as to Dr. Trompetter's opinions regarding reaction times but otherwise grants the motion.

I.  **Background**

On March 17, 2014, Plaintiff filed this action alleging that Defendant, a law enforcement officer, used excessive force during an incident on June 2, 2013, in which Defendant shot Plaintiff twice. (*See* Compl.) On April 6, 2016, before any physicians were deposed, Defendant testified that, when she shot Jennings, they were both standing and facing each other. (Dep. of Kimberly Poirier Tr. 94:6–20). She testified that she is "100 percent certain" that she did not shoot Plaintiff in the back. (*Id.* at 112:12–16.)

Subsequently, the parties deposed the emergency physician who treated Plaintiff immediately after the incident and the radiologist who interpreted Defendant's radiological imagery after the incident. Both physicians explained that the bullet wound to Plaintiff's back is an entrance wound. After these depositions, Defendant retained a forensic pathology expert, Dr. Kim Collins, who issued a report opining that the gunshot wound to Jennings' back is an entrance

wound. (*See* Dkt. No. 96-2.) Plaintiff retained a forensic pathology expert, Dr. Jonathan Arden, who also opined that the gunshot wound to Defendant's back is an entrance wound. (*See* Dkt. No. 97-1.) Plaintiff thereafter admitted, "that the medical testimony has confirmed that the gunshot wound in 'the back' was an entry wound. However, [Defendant] den[ies] that Defendant knew at the time that this gunshot wound was an entry wound as Defendant only remembers firing two shots while Plaintiff was facing her." (Def.'s Poirier Interrog. Resps. ¶ 3, July 19, 2016, Dkt. No. 113-4.) Defendant also asserts that Plaintiff "was turning in between the two shots fired and therefore received a gunshot wound to the front and back sides his body" and that "she believe[d] she fired both gunshots while Plaintiff was facing her." (*Id.* ¶¶ 1–2.)

In support of her position, Defendant identified Dr. Philip Trompetter as an expert. (Dkt. No. 96.) Dr. Trompetter is a psychologist licensed in California, specializing in police and public safety psychology. (*Id.*) Defendant expects Dr. Trompetter to testify regarding Defendant's perception and memory of the March 17, 2014 shooting of Plaintiff. (*Id.*) Plaintiff has moved to exclude most of Dr. Trompetter's opinions and his proposed trial demonstratives on relevance grounds and under Rules 403 and 702 of the Federal Rules of Evidence. (Dkt. No. 113.)

## II. Legal Standard

Under Rules 104(a) and 702 of the Federal Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Thus, the trial court must ensure that (1) "the testimony is the product of reliable principles and methods," that (2) "the expert has reliably applied the principles and methods to the facts of the case," and (3) that the "testimony is based on sufficient facts or data." Fed. R. Evid. 702(b)–(d). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid,"

*Daubert*, 509 U.S. at 592–93, and whether the expert has "faithfully appl[ied] the methodology to facts," *Roche v. Lincoln Prop. Co.*, 175 F. App'x 597, 602 (4th Cir. 2006).

Factors to be considered include "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the "known or potential rate of error," the "existence and maintenance of standards controlling the technique's operation," and whether the theory or technique has garnered "general acceptance." *Daubert*, 509 U.S. at 593–94; *accord United States v. Hassan*, 742 F.3d 104, 130 (4th Cir. 2014). However, these factors are neither definitive nor exhaustive, *United States v. Fultz*, 591 F. App'x 226, 227 (4th Cir. 2015), *cert. denied*, 135 S. Ct. 2370 (2015), and "merely illustrate[] the types of factors that will bear on the inquiry," *Hassan*, 742 F.3d at 130. Courts have also considered whether the "expert developed his opinions expressly for the purposes of testifying," *Wehling v. Sandoz Pharms. Corp.*, 162 F.3d 1158 (4th Cir. 1998) (unpublished per curiam), or through "research they have conducted independent of the litigation," *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) (on remand), and whether experts have "failed to meaningfully account for . . . literature at odds with their testimony," *McEwen v. Balt. Wash. Med. Ctr. Inc.*, 404 F. App'x 789, 791–92 (4th Cir. 2010).

Rule 702 of the Federal Rules of Evidence also requires courts "to verify that expert testimony is 'based on sufficient facts or data.'" *EEOC v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015) (quoting Fed. R. Evid. 702(b)). The court may exclude an opinion if "there is simply too great an analytical gap between the data and the opinion offered." *Id.* "The proponent of the [expert] testimony must establish its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

The Court is mindful that the *Daubert* inquiry involves "two guiding, and sometimes competing, principles." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). "On the one hand, . . . Rule 702 was intended to liberalize the introduction of relevant expert evidence," *id.*, and "the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system," *United States v. Stanley*, 533 F. App'x 325, 327 (4th Cir. 2013). On the other, "[b]ecause expert witnesses have the potential to be both powerful and quite misleading, it is crucial that the district court conduct a careful analysis into the reliability of the expert's proposed opinion." *Fultz*, 591 F. App'x at 227.

## III. Discussion

Dr. Trompetter's report provides opinions under four headings: Attention, Perception, and Memory Distortion; Reaction Time; Shot in the "Back"; and Mistake-of-Fact Shootings. The Court considers each in turn, and then considers Dr. Trompetter's proposed trial demonstratives.

### A. Attention, Perception, and Memory Distortion

Dr. Trompetter opines that stress, such as occurs during an officer-involved shooting, increases the likelihood that a person will experience some form of Memory, Attention, and Perception ("MAP") distortion. (Dep. of Philip Trompetter Tr. 117:2–15; 57:21–25; 58:1–6; 86:1–20.) MAP distortions manifest as forgetting certain facts, recalling facts incorrectly, tunnel vision, the perception that events occurred in slow motion, the perception that events occurred faster than they actually occurred, the perception that sounds were diminished, or the perception that sounds were intensified. (*See* Report of Dr. Philip Trompetter 5–7, May 13, 2016, Dkt. No. 96-1.) Stress may cause varying degrees and types of MAP distortions depending on the person. (Dep. Tr. 89:9–21.)

Dr. Trompetter admits that his opinions regarding MAP distortions purport to assist jurors in assessing Defendant's credibility. (Trompetter Dep. Tr. 193:10–13.) Without question, he

means to do so by offering testimony that supports Defendant's credibility. Plaintiff objects that bolstering the credibility of another witness under the guise of an expert opinion impermissibly invades the province of the jury.

Plaintiff points to *Westcott v. Crinklaw*, 68 F.3d 1073 (8th Cir. 1995), as being directly on point. In *Westcott*, a law enforcement officer shot and killed a man, whose wife then sued him in a § 1983 action. The officer had made statements immediately after the shooting that were damaging to his defense. At trial, the officer presented an expert witness who testified that post-traumatic stress may cause inaccurate memories and that the officer exhibited symptoms of post-traumatic stress. *Westcott*, 68 F.3d at 1075–76. The Eight Circuit reversed and remanded for a new trial, holding that admission of that testimony was an abuse of discretion. It reasoned that the expert's testimony provided "a psychological label or diagnosis as a way of excusing or justifying [the defendant's] statements . . . . The accuracy of these statements is a pure question of credibility" and that the "reliability of [the defendant's] statements, however, was a credibility issue which should have been left in the exclusive province of the jury." *Id.* at 1076–77. Plaintiff also cites to district court cases holding expert testimony on the effect of stress on a fact witness's credibility to be inadmissible for similar reasoning. *E.g.*, *United States v. Baylor*, Crim. No. 3:11-64, 2011 WL 5910061 (E.D. Va. Nov. 28, 2011); *United States v. Libby*, 461 F. Supp. 2d 3 (D.D.C. 2006); *Robertson v. McCloskey*, 676 F. Supp. 351 (D.D.C. 1988).

Defendant attempts to distinguish *Westcott* based on the fact that the expert in *Westcott* "did more than describe the characteristics of post-traumatic stress syndrome or its manifestations" by testifying that the defendant "was suffering from post-traumatic stress syndrome" which "oftentimes results in an officer making incomplete, inaccurate, and misleading statements." 68 F.3d at 1076–77. The Court finds that distinction unpersuasive. The Eighth Circuit was simply

distinguishing its earlier case of *United States v. Johns*, 15 F.3d 740 (8th Cir. 1994), in which it had held that an expert could describe the characteristics of sexually abused children but could not state an opinion that sexual abuse had in fact occurred. That case was distinct, the Eighth Circuit reasoned, because the expert testimony in *Westcott* "directly addressed the credibility of [the defendant]." *Id.* at 1077. Here, Dr. Trompetter likewise directly and explicitly addresses the credibility of Defendant. (*See, e.g.*, Trompetter Report 7 ("The inconsistency between Deputies Newkirk and Poirier's report of how Mr. Jennings was taken into custody may be related to the difference of being in the fight to being a witness to the fight. Deputy Newkirk had less exposure time than Deputy Poirier.").)

*Westcott* is a decision of a foreign circuit, but this Court concludes that it is directly on point and highly persuasive. Dr. Trompetter proposes to vouch for the credibility of one eyewitness (Defendant), and, thereby, to cast doubt on the credibility of another eyewitness (Plaintiff). That is improper: the jury exclusively determines witness credibility. *See United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995) ("[E]xpert testimony can be properly excluded if it is introduced merely to cast doubt on the credibility of other eyewitnesses, since the evaluation of a witness's credibility is a determination usually within the jury's exclusive purview."). The Court therefore excludes Dr. Trompetter's opinions regarding MAP distortions.

### B.   Reaction Time

Dr. Trompetter proposes to opine on how long it takes law enforcement officers to draw and fire their weapons. (Trompetter Report 7–8.) Plaintiff argues that such testimony is irrelevant because Defendant has testified that she drew her weapon and issued verbal commands to Plaintiff before shooting him. Plaintiff does not seek to exclude Dr. Trompetter's opinions as to how long it takes law enforcement officers to fire their weapons after deciding to shoot.

Defendant responds that the length of time required to unholster a weapon may be relevant to explaining why Defendant unholstered her weapon when she did. The Court finds that response persuasive.

Plaintiff also argues that Dr. Trompetter's opinions on how long it takes law enforcement officers to stop shooting after deciding to cease are irrelevant. Plaintiffs' basis for objecting to this opinion is merely that it would support a defense inconsistent with Defendant's deposition testimony—*e.g.*, that Plaintiff's back turned to Defendant before she could stop from firing the second shot versus a conscious decision to fire a second shot because the first shot had been ineffective in stopping Plaintiff's purported aggressive behavior. (*See* Mot. Exclude 21.) Again, witness credibility will be determined by the jury. The Court therefore will not exclude Dr. Trompetter's opinions regarding reaction times.

### C.     Shot-in-the-Back

Rule 702 of the Federal Rules of Evidence allows expert opinion testimony from witnesses who are "qualified." Dr. Trompetter is unqualified to provide the opinions expressed in the "Shot in the 'Back'" section of his report. In that section, he opines as to the biomechanics of gunshot wounds—how bodies twist in response to gunshot wounds, how fast they twist or fall, etc. (Trompetter Report 8.) The Court has reviewed Dr. Trompetter's curriculum vitae and has found no evidence that he has any qualifications in forensic pathology, forensic anthropology, crime scene reconstruction, or any similar field. (*See id.* at Curriculum Vitae.) He has degrees in clinical psychology and has worked as a psychologist for approximately 46 years. (*Id.*) Defendant implies that Dr. Trompetter can testify as an expert on this topic from personal experience by stating that Dr. Trompetter has "personal experience with situations where an officer believes that he has shot a subject while the subject was facing him, when in fact, the evidence shows that the subject had been shot in the back." (Def.'s Resp. Opp'n Mot. Exclude 8, August 15, 2016, Dkt. No. 115.)

Defendant does not claim Dr. Trompetter has any personal experience with crime scene reconstruction or pathology. There is no claim that Dr. Trompetter has ever conducted a forensic examination of a gunshot wound. The Court therefore excludes Dr. Trompetter's opinions regarding the biomechanics or forensics of gunshot wounds.

In excluding Dr. Trompetter's opinions on this point, the Court does not prevent Defendant from arguing that she fired at Plaintiff while he was facing her, and that her first shot twisted his back to her before she could check her fire. The Court merely rules that a psychologist is not qualified to testify as a forensic pathologist. The Court notes that the other expert witness identified by Defendant, Dr. Kim Collins, is certified in anatomic pathology, clinical pathology, and forensic pathology, and is, according to Defendant, "expected to testify regarding the mechanics of the shooting incident." (Dkt. No. 96.) Her expert report states, "It is my opinion that Officer Poirier shot Jennings first in the right arm and . . . [a]s a consequence of this first gunshot and his wounds, Jennings turned toward his right. As the second shot was fired, Jennings was turning and the bullet entered his left flank. . . . Wound ballistics support the change in position of a victim after the firing of a bullet resulting in an entry wound location different from that anticipated by the shooter." (Report of Dr. Kim Collins 3, May 11, 2016, Dkt. No. 96-2.)

### D.    Mistake-of-Fact Shootings

Plaintiff moves to exclude Dr. Trompetter's opinion that 18%–30% of justified officer-involved shootings involve a mistake of fact and that "questionable" shootings are "largely attributable" to misidentification of the threat level due to darkness, precipitating suspect behavior, and "context-based expectations relative to the nature of the assignment or call." (Mot. Exclude 24–25 (quoting Trompetter Report 8–9).) Plaintiff argues, and the Court agrees, that the frequency with which officers have historically made mistakes of fact is not probative as to whether Defendant used excessive force against Plaintiff.

-8-

Plaintiff argues that Dr. Trompetter's opinion regarding attribution of "questionable" shootings rests on unreliable data. (*Id.* at 26.) The Court does not reach that issue. Common sense says that darkness, suspect behavior, and the nature of the call to police may result in an unarmed person being shot in the back. Defendant may present evidence concerning ambient light, Plaintiff's behavior, and the nature of the call to which Defendant was responding, and Defendant may argue why those facts show that Defendant acted reasonably under the circumstances. Expert testimony that "questionable shootings" are "largely attributable" to such factors is not probative as to whether the shooting at issue in this case is attributable to such factors. Rather, it is an attempt to bolster Defendant's credibility. The Court therefore excludes the opinions expressed by Dr. Trompetter in the "Mistake-of-Fact Shootings" section of his report. *See* Fed. R. Evid. 401 (evidence is not relevant if it is of no consequence in determining the action); Fed. R. Evid. 403 (allowing exclusion of evidence if danger of misleading the jury substantially outweighs its probative value).

### E.     Dr. Trompetter's Demonstratives

The Court considers each of Dr. Trompetter's graphic and video demonstratives in turn and excludes them for the reasons set forth below.

The video "180 degree turn" and associated still-frames are apparently meant to support the argument that Plaintiff was facing Defendant when she decided to shoot, and that he turned his back to her in less time than it takes to pull the trigger. However, the person in the video brandishes a firearm before turning to flee. Because Defendant was not armed, a video in which the actor playing Plaintiff brandishes a firearm directly at the viewer is inflammatory and prejudicial. *See* Fed. R. Evid. 403. Furthermore, as explained above, Dr. Trompetter is unqualified to opine on biomechanics. So even if no weapon were brandished in the video, this video could not be a demonstrative to his testimony.

The video of a seated man firing a pistol over his shoulder has no plausible connection with this case.

The video of a woman drawing a pistol from her waistband and firing it from the hip may relate to Defendant's deposition testimony that she though Plaintiff might have had a weapon in his waistband. (*See* Mot. Exclude 20.) A video of someone who actually has a weapon in her waistband drawing and firing that weapon is not probative of the reasonableness of Defendant's concern that Plaintiff had a weapon in his waistband. Reaction times for drawing and firing a weapon concealed within a waistband can be explicated without a video of gunfire, which may suggest that Plaintiff was more dangerous than the evidence establishes. Therefore, to the extent that the video is probative of such reaction times, the Court finds that this video presents a danger of unfair prejudice and of misleading the jury, which substantially outweighs its probative value. *See* Fed. R. Evid. 403.

The animated recreation of a November 21, 2000 shooting in Oklahoma City, in which someone is shot in the buttocks after climbing over a fence while holding a rock, has no plausible connection with this case.

The videos of similarly dressed persons passing basketballs while a person in a gorilla suit walks by have no plausible connection with this case. There is no allegation that Plaintiff was concealed within a crowd of identically dressed persons. Nor does the fact that people who are asked to disregard persons dressed in black might not notice a passing person dressed in a black gorilla suit have any relevance to this case.

The skit essentially acting out the board game "Clue" has no plausible connection with this case.

The diagram showing someone shooting a falling person in the upper back has no plausible connection with this case. Plaintiff was not shot in the upper back after having fallen forward onto his face.

The video showing an armed and masked assailant shooting a Philadelphia police officer as he sat in his patrol car, and then running away while police fired at him (presumably firing at his back), has no possible relevance to this case, and is, obviously, highly prejudicial and inflammatory.

The video of wild boars attacking a leopard on Chinese television has no plausible connection with this case. The Court admonishes Defendant that a civil rights trial in federal court is a matter to be taken seriously.

Plaintiff moves to exclude these demonstratives, and in response Defendant does not defend them. The Court therefore grants Plaintiff's motion to exclude them.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to exclude certain opinions of Philip Trompetter (Dkt. No. 113).

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

August 22, 2016
Charleston, South Carolina