# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Ricky Jennings, | Civil Action No. 2:14-929-RMG |
| Plaintiff, | |
| v. | **ORDER UNDER SEAL** |
| Deputy Poirier, | |
| Defendant. | |

This matter is before the Court on Plaintiff's motion in limine (Dkt. No. 121) and Defendant's motion in limine (Dkt. No. 131). For the reasons set forth below, Plaintiff's motion is granted in part and denied in part, and Defendant's motion is denied.

## I. Background

On June 2, 2013, Defendant Kimberly Poirier, a deputy with the Charleston County Sheriff's Office, responded to a call from a citizen reporting a U-Haul truck driving erratically on Highway 17. Deputy Poirier pulled up behind the U-Haul truck driven by Plaintiff Rickey Jennings, which she believed to be the truck observed by the citizen, and observed it failing to stay in its lane. After she turned on her blue lights and siren and pulled up behind him, Mr. Jennings continued to drive the U-Haul for several minutes without stopping, driving from Charleston County into Georgetown County. When he did pull over, he exited the U-Haul. Deputy Poirier stopped her patrol car behind the U-Haul, exited her patrol car, stood with her body positioned behind her patrol car door, pointed her firearm at Mr. Jennings, and gave him verbal commands. Mr. Jennings did not follow her verbal commands. He then attempted to flee, running into the woods. Deputy Poirier then chased Jennings into the woods, tased him in the back, and placed one handcuff on him.

Deputy Poirier's and Mr. Jennings' accounts diverge regarding what occurred after Deputy Poirier placed one handcuff on Mr. Jennings. Deputy Poirier claims she and Mr. Jennings engaged in an altercation in which she punched Mr. Jennings in the face, Mr. Jennings climbed on top of her and attempted to grab her firearm from its holster, and that Mr. Jennings then squared off across from her in a fighting stance and refused to comply with her verbal commands. Deputy Poirier claims that she only shot Mr. Jennings after all of these events occurred. Mr. Jennings claims that he was able to stand up, break free from her, and run away, and Deputy Poirier shot him in the back as he was attempting to flee from her.

Mr. Jennings has brought suit claiming Deputy Poirier used excessive force in arresting him, in violation of the Fourth Amendment. Both parties have moved in limine to exclude certain matters from evidence. The Court held a hearing on the motions in limine on September 19, 2016. Jury trial of this case begins October 4, 2016.

## II.  Legal Standard

Although not specifically provided for in the Federal Rules of Evidence, motions in limine "ha[ve] evolved under the federal courts' inherent authority to manage trials." *United States v. Verges*, Crim. No. 1:13-222, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014). "The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *Id.* "Questions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006); *see also United States v. McBride*, 676 F.3d 385, 403 (4th Cir. 2012) ("[A]ssessing [whether evidence is] relevan[t] is at the heart of the district court's trial management function."). A district court therefore has "broad discretion" in deciding a motion in limine. *Kauffman v. Park Place Hosp. Grp.*, 468 Fed. App'x

220, 222 (4th Cir. 2012). Nonetheless, a motion in limine "should be granted only when the evidence is clearly inadmissible on all potential grounds." *Verges*, 2014 WL 559573, at *3.

### III. Discussion

#### A. Plaintiff's Motions in Limine

##### 1. Jennings's fraud and assault convictions

On October 16, 2007, Mr. Jennings attempted to commit a fraudulent transaction at a bank, ran from a police officer, was caught in the parking lot, used a stun gun on the police officer, but was subdued and arrested when a civilian bystander assisted the officer. He was convicted of bank fraud and aggravated assault. Mr. Jennings concedes the bank fraud conviction is admissible under Rule 609(a)(2) but asserts the assault conviction is not and should be excluded under Rule 403. Mr. Jennings argues that Deputy Poirier did not know about the conviction during the incident on June 2, 2013, that the assault conviction therefore would only suggest that he behaved in conformity with his prior conduct, that the factual similarity of the October 16, 2007 incident to the June 2, 2013 incident makes any mention of the October incident highly prejudicial, and that an assault conviction does not bear on his truthfulness. He also argues the facts underlying his convictions should be excluded under Rule 403 for the same reason.

Deputy Poirier argues the assault arrest and conviction are more probative of his intentions on June 2, 2013 than prejudicial. Mr. Jennings's convictions resulted in his imprisonment until April 28, 2013. At the time of the incident, he was on probation and was required to stay in the Savannah, Georgia area. Deputy Poirier argues that immediately upon his release into probation he began criminal activity, obtaining fraudulent identification cards and credit cards, and stealing checks from local businesses, and that this continuation of criminal conduct is admissible under Rule 404(b), as it shows his intent, preparation, plan, and motive to fight Deputy Poirier when she caught him *in flagrante*. She also argues the 2007 incident in the bank parking lot put Jennings on

notice that he could successfully resist a male officer if no other person were available to help the officer; on June 2, 2013, he was alone in the woods with a much smaller female officer.

Mr. Jennings's argument relies heavily on *United States v. Sanders*, 964 F.2d 295 (4th Cir. 1992), but that case is inapposite because it dealt with a testifying criminal defendant. Felony convictions of a testifying criminal defendant are not subject to a Rule 403 analysis; instead, a stricter "probative value of the evidence outweighs its prejudicial effect" standard applies—not Rule 403's "substantially outweighs" standard. Fed. R. Evid. 609(a)(1)(B). Rule 609 provides that a less-than-ten-year-old felony conviction "must" be admitted for impeachment purposes in a civil case subject to Rule 403, *i.e.*, its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 609(a)(1)(A). Rule 404(b) also is subject to a Rule 403 analysis. Fed. R. Evid. 403 advisory comm. notes.

The issue therefore is simply a Rule 403 question within the Court's discretion. The Court finds that the similarity between the facts underlying Mr. Jennings's 2007 assault conviction and the facts Deputy Poirier asserts in her defense is so great that the prejudice from placing the assault conviction before the jury would substantially outweigh its probative value. *See* Fed. R. Evid. 403. If the facts regarding Mr. Jennings assault conviction were presented fully to the jury, the jury would simply assume he fought her as he fought the officer in 2007. The verdict rendered in this case would then reflect events occurring in 2007, not 2013. The Court therefore grants Mr. Jennings's motion to exclude any reference to Mr. Jennings's conviction for assault in 2007.

### 2. Certain facts about the 2013 incident

Mr. Jennings used false identification to rent the U-Haul driven on the night of the incident. After his arrest following the incident, he provided a false name to law enforcement and to hospital staff. Mr. Jennings argues that these details are irrelevant to whether Deputy Poirier used excessive

force and that they should be excluded under Rules 402 and 403. Also, at the time of the incident Jennings had certain checks and other documents in his possession that did not belong to him. When he ran from Poirier, he dropped some of those papers. Deputy Poirier has testified that thought Mr. Jennings was dropping narcotics. Mr. Jennings does not challenge Deputy Poirier's right to testify that she saw him dropping items that she thought were narcotics, but he seeks to exclude the true nature of the documents as irrelevant. Deputy Poirier argues that these details are probative of Mr. Jennings's truthfulness, and that they show plan, intent, and preparation to fight police (if stopped) on June 2, 2013.

The Court finds Mr. Jennings's multiple acts of deception more probative than prejudicial. Mr. Jennings and Deputy Poirier were the only two witnesses to the events at issue. Their credibility is the crux of the case. That Mr. Jennings was engaged in dishonest behavior is a proper matter for the jury to consider when assessing his credibility. Further, Mr. Jennings's actions are evidence necessary to establish the totality of the circumstances confronting Deputy Poirier: A criminal caught in the act, desperate to escape, confronted by a smaller woman in a secluded area. "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The Court therefore denies Mr. Jennings's motion to exclude these facts from evidence.

### 3. Jennings's use of drugs or alcohol

Mr. Jennings asserts that he abused cocaine and alcohol in the 1980s and early 1990s, but stopped altogether in 1993 until the day before the incident (June 1, 2013), when he began drinking again. He moves under Rule 403 to exclude any evidence related to his use of drugs or alcohol before June 1, 2013, as irrelevant and prejudicial. Deputy Poirier argues his return to heavy

drinking after a long period of sobriety is probative of the effect of the alcohol on him, *i.e.*, he lacked the tolerance of a habitual drunkard. Deputy Poirier also argues that, after the incident, Jennings was not honest with his pain management physicians about his prior drug abuse.

Deputy Poirier's point about alcohol tolerance is fair, but can be made simply by pointing out that Jennings stopped drinking many years before June 1, 2013. There is no reason to mention his cocaine problem from twenty years ago, except to appeal to juror prejudices concerning drug abuse. Any medication dependency issues Mr. Jennings may have experienced after the incident are irrelevant to the issues at trial but potentially prejudicial. The Court therefore grants Mr. Jennings's motion to exclude any mention of Mr. Jennings's substance abuse issues before June 1, 2013 or after June 2, 2013. The Court does not exclude evidence relating to Mr. Jennings's use of alcohol in or near the period of June 1 to June 2, 2013.

### 4. Headshots

Mr. Jennings argues that certain headshots of him, taken soon after the incident and used as exhibits at his deposition, depict him with an angry expression. He argues that since the jury will see him at trial, they do not need to see photographs of his face. Jennings moves to exclude the photographs under Rule 403. Deputy Poirier argues that the photographs are probative of his appearance in 2013.

Jennings is now a paraplegic and likely appears less robust now than he did in 2013. The Court has reviewed Deputy Poirier's dashboard camera footage of the incident, which includes video of Mr. Jennings walking toward her police vehicle. The Court finds the video of Mr. Jennings is too lacking in resolution to be useful. The Court has also reviewed the proposed headshot exhibits. The Court denies Mr. Jennings's motion to exclude the photograph marked as Exhibit 3, but grants Mr. Jennings's motion to exclude Exhibits 1, 2, and 4, because those photographs depict Mr. Jennings with an angry facial expression. The Court agrees that the

prejudice from photographs depicting Mr. Jennings with an angry facial expression would substantially outweigh whatever probative value they might have.

### B.  Defendant's Motions in Limine

#### 1.  Evidence related to the Charleston Sheriff's Office internal review or SLED's review of the incident

Deputy Poirier argues the reports generated by the Sheriff's Office's internal review of the incident (including incident reports created in the immediate aftermath and reports memorializing her own statements) are irrelevant because the Sheriff's Office is not a party and because the reports would "confuse the issues." She raises the same argument regarding the SLED investigation. She cites *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006), to argue that compliance with police policies and procedures is irrelevant to an excessive force claim. Mr. Jennings notes that there is a circuit split on the issue and that the Fourth Circuit has, in some cases, allowed evidence of compliance with police procedures, citing *Vizbaras v. Prieber*, 761 F.2d 1013 (4th Cir. 1985). Mr. Jennings however fails to note the abrogation of *Vizbaras*:

> The Supreme Court's decision in *Anderson v. Creighton*, 483 U.S. 635 (1987) also seems to vitiate *McElveen* and *Vizbaras* to the extent they suggest that the officers' subjective intent or malice may be relevant. . . . Although *Anderson* and *Rowland* permit consideration of the facts as perceived by the officer, they preclude consideration of what *McElveen* and *Vizbaras* seem to allow, an inquiry into the official's subjective belief as to the legality of his actions.

*Amato v. City of Richmond*, 875 F. Supp. 1124, 1142–43 (E.D. Va. 1994) (parallel citations omitted), *aff'd*, 78 F.3d 578 (4th Cir. 1996). The Court agrees with Deputy Poirier that compliance with police procedures is not the standard controlling this case, and so her compliance with procedures is not, in the abstract, relevant. But even if evidence of noncompliance with policies were excluded, evidence regarding what Deputy Poirier said and what other officers saw regarding the incident is admissible regardless of whether such evidence was generated in the context of an investigation of a possible violation of departmental policies. A police department does not make

otherwise admissible evidence inadmissible by investigating an incident as a possible violation of internal policies. Many officers responded to the incident and their reports of what they saw and heard are relevant and have probative value outweighing any potential prejudice. Moreover, Mr. Jennings's point that any narrative account of the incident must rely solely on her statements, because she and Mr. Jennings were the only witnesses and Mr. Jennings was not interviewed for the Sheriff's Office's internal review or the SLED investigation, is well taken. As a general matter, official reports of a public office of matters observed while under a legal duty to report, or factual findings of government investigations, are admissible in civil trials. Fed. R. Evid. 803(8). That is no less true when those reports rely entirely on statements of a party opponent.[1]

### 2. Review of individual exhibits

Whether particular reports created by the Sheriff's Office's investigation, or SLED's investigation, are admissible must be decided on a report-by-report basis. Plaintiff has provided the investigative reports at issue and related documents as proposed Plaintiff's exhibits. Deputy Poirier has raised objections to those documents, which the Court below addresses.

### a. *Plaintiff's Exhibit No. 2 – Affidavit of Deputy Poirier*

Deputy Poirier objects that *Garrity* precludes admission of an affidavit she filed in this case (Dkt. No. 47-2). As explained above, *Garrity* does not apply in a civil case. Moreover, there is

---

[1] Deputy Poirier raises two additional objections to admission of official Sheriff's Office or SLED records. She argues that "after-incident reports or reports of investigations" generated by the Sheriff's Office's review should be excluded as subsequent remedial measures under Rule 407. That argument is meritless. A report of an investigation is not a remedial measure under Rule 407. Deputy Poirier cites no authority suggesting otherwise. At the September 19, 2016 hearing, Deputy Poirier asserted *Garrity v. New Jersey*, 385 U.S. 493 (1967), requires exclusion of her statements to internal investigators. That argument is erroneous. *Garrity* does not apply in civil matters. 385 U.S. at 500 ("We now hold the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office . . . .").

no colorable argument that an affidavit voluntarily submitted in support of Deputy Poirier's voluntarily filed motion for summary judgment is a "coerced statement." Defendant's sworn statement, filed in this case to support factual claims made in her defense, is admissible as an opposing party statement. *See* Fed. R. Evid. 801(d)(2).

        *b.*    *Plaintiff's Exhibit No. 4 – Charleston County Accident Investigation Form*

This exhibit is admissible as a record of a public office memorializing what Deputy Poirier said or what other officers saw regarding the incident. *See* Fed. Rs. Evid. 801(d), 803(8).

        *c.*    *Plaintiff's Exhibit No. 5 – Use of Force Review*

This exhibit is admissible as a record of a public office memorializing what Deputy Poirier said or what other officers saw regarding the incident. *See* Fed. Rs. Evid. 801(d), 803(8).

        *d.*    *Plaintiff's Exhibit No. 6 – Use of Force Statement (Policy)*

This exhibit consists of copies of the Charleston County Sheriff's Office's use of force policy, each signed by Deputy Poirier. It does not describe what Deputy Poirier said or what other officers saw regarding the incident, and its admission would serve to confuse the jury regarding the legal standard for constitutional use of deadly force—which is determined by law, not by departmental policy statements. Because this exhibit may be confusing to the jury and because it has no probative value, the Court excludes it under Rule 403.

        *e.*    *Plaintiff's Exhibit No. 7 – James Perkins Incident Report*

This exhibit is admissible as a record of a public office memorializing what Deputy Poirier said or what other officers saw regarding the incident. *See* Fed. Rs. Evid. 801(d), 803(8).

        *f.*    *Plaintiff's Exhibit No. 9 – SLED Investigative File (report on incident)*

This exhibit is admissible as a record of a public office memorializing what Deputy Poirier said or what other officers saw regarding the incident. Deputy Poirier additionally raises a hearsay

objection to this exhibit. Records or statements of public office that set out factual findings from a legally authorized investigation are admissible in a civil case as a hearsay exception. Fed. R. Evid. 803(8). Deputy Poirier has not attempted to show circumstances indicating a lack of trustworthiness concerning this report (or any other Sheriff's Office or SLED report). The exhibit is admissible as a hearsay exception.

> g.   *Plaintiff's Exhibit No. 14 – Arrest Report re Mr. Jennings*

This arrest report indicates Mr. Jennings used an alias, which seems to be the basis of the asserted Rule 403 objection. The Court does not understand why Deputy Poirier would object to this report; nonetheless, it is admissible for the reasons stated in section III.A.2 of this Order.

> h.   *Plaintiff's Exhibit No. 15 – Charleston County Incident Report*

This exhibit is admissible as a record of a public office memorializing what Deputy Poirier said or what other officers saw regarding the incident. *See* Fed. Rs. Evid. 801(d), 803(8).

> i.   *Plaintiff's Exhibit No. 16 – D. Isgett Incident Report*

This exhibit is admissible as a record of a public office memorializing what Deputy Poirier said or what other officers saw regarding the incident. *See* Fed. Rs. Evid. 801(d), 803(8).

> j.   *Plaintiff's Exhibit No. 17 – Email correspondence between Deputy Poirier, Deputy Solicitor Richardson, and Sergeant Williams*

This exhibit contains statements by Deputy Poirier to other persons regarding the incident and is admissible. *See* Fed. R. Evid. 801(d).

> k.   *Plaintiff's Exhibit No. 18 – Charleston County Sheriff's Office Use of Force Report*

This exhibit is admissible as a record of a public office memorializing what Deputy Poirier said or what other officers saw regarding the incident. *See* Fed. Rs. Evid. 801(d), 803(8).

> l.  *Plaintiff's Exhibit No. 19 – Charleston County Sheriff's Office After Action Report*

This exhibit contains very little information descriptive of the events at issue. It mostly identifies administrative problems with the law enforcement response to the incident—*e.g.*, jurisdictional issues, lack of a change of clothing for Deputy Poirier, and interagency communications. What little relevant information it has is cumulative with other exhibits. The Court therefore excludes this exhibit under Rule 403.

> m.  *Plaintiff's Exhibit No. 20 – SLED Case Management History*

This exhibit is admissible as a record of a public office memorializing what Deputy Poirier said or what other officers saw regarding the incident. *See* Fed. Rs. Evid. 801(d), 803(8).

> n.  *Plaintiff's Exhibit No. 21 – Brian McKay Incident Report*

This exhibit is admissible as a record of a public office memorializing what Deputy Poirier said or what other officers saw regarding the incident. *See* Fed. Rs. Evid. 801(d), 803(8).

> o.  *Plaintiff's Exhibit No. 22 – Brian McKay Supplemental Incident Report*

This exhibit is admissible as a record of a public office memorializing what Deputy Poirier said or what other officers saw regarding the incident. *See* Fed. Rs. Evid. 801(d), 803(8).

> p.  *Plaintiff's Exhibit No. 23 – Prosecutive Summary*

This exhibit is a collection of incident reports and arrest reports. It is admissible as a record of a public office memorializing what Deputy Poirier said or what other officers saw regarding the incident. *See* Fed. Rs. Evid. 801(d), 803(8).

> q.  *Plaintiff's Exhibit No. 49 – Law Agency Incident Report*

This exhibit is a contemporaneous record of Sheriff's Office radio communications during the incident. Deputy Poirier raises hearsay and Rule 403 objections to this exhibit. The exhibit describes or explains events and was made while or immediately after the declarants (the officers

whose communications are recorded) perceived those events. It is admissible under the present sense impression exception to hearsay. Fed. R. Evid. 803(1). The Court finds no basis for a Rule 403 objection.

    *r. Plaintiff's Exhibit No. 51 – Crime Scene Investigative Report*

This exhibit is admissible as a record of a public office memorializing what Deputy Poirier said or what other officers saw regarding the incident. *See* Fed. Rs. Evid. 801(d), 803(8).

    *s. Plaintiff's Exhibit No. 53 – Arrest Warrant for Mr. Jennings*

This is a warrant for the arrest of Mr. Jennings, with a supporting affidavit describing the incident at issue. Deputy Poirier raises hearsay and Rule 403 objections to this exhibit. The exhibit is admissible as a hearsay exception: it is a record of a public office memorializing what she said or what other officers saw regarding the incident. *See* Fed. Rs. Evid. 801(d), 803(8). The Court finds no basis for a Rule 403 objection.

    *t. Plaintiff's Exhibit No. 55 – Crime Scene Supplemental Report*

Deputy Poirier raises a hearsay objection to this exhibit. This exhibit is admissible as a hearsay exception: it is a record of a public office memorializing what she Poirier said or what other officers saw regarding the incident. *See* Fed. Rs. Evid. 801(d), 803(8).

    *u. Plaintiff's Exhibit No. 57 – Crime Scene Report Attachment*

This exhibit is a diagram of the location of the incident. It is admissible as a record of a public office memorializing what Deputy Poirier said or what other officers saw regarding the incident. *See* Fed. Rs. Evid. 801(d), 803(8).

    *v. Plaintiff's Exhibit No. 60 – Email*

This is a cover email for an affidavit draft, sent from Deputy Poirier to Sergeant Williams. It is admissible as an opposing party statement. *See* Fed. R. Evid. 801(d)(2).

### 3. Evidence related to disciplinary actions against Poirier by the Myrtle Beach Police Department

Deputy Poirier was a police officer with the Myrtle Beach police department until September 2009. She became a Charleston County deputy in January 2011. Allegedly, she engaged in several instances of misconduct in Myrtle Beach, including use of excessive force, false reporting of a traffic stop, and an attempt to doctor official records to conceal damage to her patrol car. Mr. Jennings argues she was forced to resign after failing a polygraph test regarding her alteration of records.[2] Mr. Jennings admits prior allegations of excessive force against Deputy Poirier are inadmissible, but argues incidents showing her dishonesty are relevant evidence of truthfulness. Deputy Poirier argues that any evidence related to past incidents while she was Myrtle Beach police officer are irrelevant, inadmissible under Rule 404(a) as suggesting behavior in accordance with character, and inadmissible under Rule 403. Mr. Jennings objects that Deputy Poirier should not be able to introduce evidence of Mr. Jennings's past misconduct while arguing to exclude evidence of her own past misconduct.

As the Court noted above, the relative credibility of the only two eyewitnesses to the event at issue is the crux of the case. Evidence establishing the credibility or lack thereof of Mr. Jennings or Deputy Poirier is highly probative. Thus, subject to Rule 608(b)'s prohibitions on use of extrinsic evidence to prove instances of witness conduct, Mr. Jennings may inquire into possible past acts of dishonesty by Deputy Poirier, including whether she falsified official records. The Court therefore denies Deputy Poirier's motion to exclude allegations of dishonest conduct by her when employed in Myrtle Beach.

---

[2] At the September 19, 2016 hearing, counsel for Mr. Jennings did not dispute the inadmissibility of any mention of the polygraph examination.

    4.    <u>Testimony from Dep. Solicitor Richardson regarding a criminal investigation into Poirier</u>

Deputy Poirier seeks to exclude as irrelevant testimony from Georgetown County Deputy Solicitor Alicia Richardson because Ms. Richardson's role regarding the incident was only to investigate charges against Mr. Jennings. Mr. Jennings argues Ms. Richardson interviewed Deputy Poirier about the incident, and statements Deputy Poirier made about the incident to the Solicitor's Office are relevant. The Court finds Mr. Jennings's argument persuasive and denies Deputy Poirier's motion to exclude testimony from Ms. Richardson.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion in limine (Dkt. No. 121), and the Court **DENIES** Defendant's motion in limine (Dkt. No. 131).

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

September 27, 2016
Charleston, South Carolina